STATE OF WEST VIRGINIA

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.O.**

**No. 19-0119** (Mercer County 18-JA-103-DS)

## MEMORANDUM DECISION

Petitioner Custodian M.C., by counsel Gerald R. Linkous, appeals the Circuit Court of Mercer County's January 7, 2019, order terminating his custodial rights to A.O.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Earl H. Hager, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. Respondent father, by counsel Paige Flanigan, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his custodial rights when he did not have any rights to the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 18, 2018, the DHHR filed an abuse and neglect petition against petitioner and the mother alleging that the four-month-old child suffered from nonaccidential injuries while in petitioner's care.[2] According to the DHHR, upon returning home from work on April 11, 2018, the mother took the child to the hospital because he did not want to wake up and he was "very lethargic." On April 12, 2018, a Child Protective Services ("CPS") worker interviewed hospital

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The biological father and the paternal grandmother were also named as respondents in the petition. However, after evidence presented during the adjudicatory hearing established that the child was in the custody of the mother and petitioner when the child sustained the injuries, the father and the grandmother were dismissed from the proceedings.

staff who informed her that the child had a left subacute hemispheric stroke. He also suffered from a brain bleed and excess fluid on his brain causing swelling and pressure. The trauma also caused retinal hemorrhages in both eyes and an occipital fracture on the back, right side of the child's head. At that time, the child was on a ventilator and was completely reliant on the machine for breathing. According to the DHHR, the mother advised the hospital staff that she allowed petitioner, her live-in boyfriend, to watch the child while she worked and he had cared for the child on the day he sustained the injuries.

On August 6, 2018, the circuit court held an adjudicatory hearing. Petitioner moved for the circuit court to dismiss him from the proceedings. However, he subsequently stated: "Your Honor, I'll withdraw that motion. We'll just stay here." The DHHR presented testimony that established that the child sustained injuries on April 11, 2018, in petitioner's care while the mother was at work. The circuit court proceeded to hear testimony from the child's physician regarding the child's injuries. Also during the hearing, the mother stipulated to neglecting the child. The circuit court concluded the adjudicatory hearing on September 10, 2018. Petitioner did not attend but was represented by counsel. Petitioner renewed his request to be dismissed from the proceedings involving A.O., claiming he "has no interest in this child whatsoever. He doesn't have any custodial rights, anything." The circuit court denied his request. Based upon the evidence presented, the circuit court found that petitioner "caused the serious bodily injuries to the infant child."

On December 3, 2018, the circuit court held a dispositional hearing. A CPS worker testified regarding the injuries petitioner caused to the child. She explained that there was "some retina[l] detachment in one eye, injury in the other eye and a hematoma on his head. And he's actually delayed in his development stages now because of it." The DHHR requested that petitioner's custodial and guardianship rights be terminated. However, on cross-examination, when asked if there was any kind of guardianship agreement between the mother and petitioner, the CPS worker responded: "Not that I'm aware of." When she was asked if petitioner had any rights to the child, the CPS worker responded: "No." Nevertheless, she affirmed that the child was in the care and custody of petitioner when the child was injured. Following the presentation of testimony and arguments of the parties, the circuit court noted that it previously found that petitioner had the care, custody, and control of the child when he was injured. The circuit court stated: "I'm going to terminate whatever rights he may have [to] this child because his conduct was just outrageous." The circuit court found no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that the termination of petitioner's custodial rights was necessary for the child's welfare. Petitioner's custodial rights were terminated in the circuit court's January 7, 2019, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[3]The child's mother is currently participating in a post-dispositional improvement period. The father is a nonabusing parent. The permanency plan is for the child to remain in his father's custody. The mother has supervised visitation with the child.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

In his sole assignment of error, petitioner argues that the circuit court erred in terminating his custodial rights because he did not have any rights to the child.[4] In support, he avers that the circuit court did not find that he had rights to the child and the West Virginia Code is "silent as to a definition of custodial rights." We do not find petitioner's argument persuasive. An abused child is a child "whose health or welfare is being harmed or threatened by . . . [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." W. Va. Code § 49-1-201. Further, West Virginia Code § 49-1-204 provides that a "custodian" is defined as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement."

Here, petitioner was properly named as a party to the proceedings because the child was in his care while the mother was working on April 11, 2018, and when the child sustained serious injuries. Petitioner admits that when he cared for the child, he fell under the definition of "custodian" because "for a brief number of hours [he] had 'actual physical possession or care and custody'" of the child. However, he argues that by acting as a custodian of the child, he did not acquire custodial rights. He compares his situation to that of babysitters and teachers and explains that they may be custodians of children without acquiring custodial rights to those children. This argument is not compelling, however, because petitioner's relationship with the child at issue on appeal was clearly different from a relationship between a child and a babysitter or a teacher. Petitioner lived in the mother's home along with the child at the time the abuse and neglect petition was filed. Petitioner and the mother were involved in a romantic relationship and petitioner

_____

[4]Also in support of his argument, petitioner argues that this Court has addressed a circuit court's termination of parental rights that an individual did not have. *See In re R.S.*, No. 15-0179, 2015 WL 3875743 (W. Va. June 22, 2015)(memorandum decision). However, this case is distinguishable from that of petitioner's because in *R.S.*, the Court found that the circuit court erred in terminating an individual's parental rights prior to establishing that he was the child's biological father, particularly when DNA testing determined that he was not the father. *Id*. at 2.

routinely provided care for the child while the mother worked. Further, the fact that petitioner and the mother are no longer in a relationship does not negate the fact that he was a custodian to the child at the time he physically abused the child. The allegations in the petition were in regard to the circumstances of abuse at the time of filing. Based on this evidence, it is clear that petitioner was exercising custodial rights to the child when the child was injured.

We find no error in the circuit court's termination of petitioner's custodial rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate custodial rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

As discussed above, the record shows that the child suffered from severe injuries while in petitioner's care. The injuries caused a brain bleed and excess fluid on the child's brain causing swelling and pressure. He also suffered retinal hemorrhages in both eyes and an occipital fracture on the back of his head. The injuries that the child suffered at the hands of petitioner caused developmental delays and other issues. The circuit court noted during the dispositional hearing that it was compelled to "terminate whatever rights [petitioner] may have [to] this child because his conduct was just outrageous." Moreover, throughout the entirety of the proceedings, petitioner failed to acknowledge the abuse or admit to causing the child's injuries. We have previously noted that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Therefore, because petitioner failed to acknowledge that he perpetrated the abuse on the child, he was unable to remedy the problem. Thus, it is clear that there was no reasonable likelihood that the conditions of abuse could be substantially corrected in the near future and that the termination of petitioner's custodial rights was necessary for the child's welfare.

Finally, because the mother's abuse and neglect proceedings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

4

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 7, 2019, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5